**[J-85-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 81 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 380 MDA |
| | : | 2023 dated January 8, 2024, |
| v. | : | Affirming and Remanding the |
| | : | Judgment of Sentence of the |
| | : | Dauphin County Court of Common |
| MICHAEL DEAN OSMAN, | : | Pleas, Criminal Division, at No. CP- |
| | : | 22-CR-0001818-2020 dated |
| Appellant | : | November 30, 2022 |
| | : | |
| | : | ARGUED:  October 8, 2025 |

**OPINION**

**JUSTICE DONOHUE**                                        **DECIDED:  July 21, 2026**

Under the Sexual Offender Registration and Notification Act ("SORNA"),[1] sex offenses are "classified in a three-tiered system composed of Tier I sexual offenses, Tier II sexual offenses and Tier III sexual offenses."  42 Pa.C.S. § 9799.14(a).  In this appeal, we consider the application of Section 9799.14(d)(16), which assigns the most serious tier classification under SORNA (Tier III) to an offender who accumulates "[t]wo or more convictions of offenses listed as Tier I or Tier II sexual offenses."  42 Pa.C.S. § 9799.14(d)(16).  Tier III classification carries with it significant civil consequences in terms of registration and reporting requirements.[2]  Pertinent here, the Sentencing Code also

---

[1]  42 Pa.C.S. §§ 9799.11-9799.75.

[2]  For example, commission of a Tier III offense requires the offender to register with the Pennsylvania State Police for life.  42 Pa.C.S. § 9799.15(a)(3).  By contrast, Tier I and (continued…)

mandates a consecutive three-year term of probation on any individual who commits a Tier III offense in addition to any other sentence imposed, including a statutory maximum sentence. 42 Pa.C.S. §§ 9718.5(a), (b).

In this case, a jury convicted Appellant, Michael Dean Osman ("Osman"), of both Tier I and Tier II offenses at the same trial. The trial court imposed a Section 9718.5(a) sentence, reasoning that Section 9799.14(d)(16) applied although Osman had no record of prior sexual offenses. The Superior Court affirmed, applying its own interpretation of Section 9799.14(d)(16).

We reverse that aspect of the Superior Court's decision. Consistent with our precedent interpreting nearly identical language in *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 908 (Pa. 2016) ("*A.S. v. PSP*"), and the very same provision in *Commonwealth v. Lutz-Morrison*, 143 A.3d 891 (Pa. 2016), we hold that to trigger Section 9718.5(a)'s mandatory sentence by application of Section 9799.14(d)(16), there must be "an act, a conviction, and a subsequent act[.]" *A.S. v. PSP*, 143 A.3d at 908; *Lutz-Morrison*, 143 A.3d at 895. Because Osman's convictions did not trigger application of Section 9799.14(d)(16), his Section 9718.5(a) sentence is illegal.

**Background**

In August 2022, a jury convicted Osman of corruption of minors, unlawful contact with a minor, and indecent assault.[3] Prior to sentencing, Osman was evaluated by the Sexual Offender Assessment Board, which determined that Osman did not meet the statutory criteria of a sexually violent predator. N.T., 11/30/2022, at 2. A sentencing

---

Tier II offenses require registration periods of ten and twenty-five years, respectively. *Id.* § 9799.15(a)(1), (2).

[3] 18 Pa.C.S. §§ 6301, 6318, 3126. The jury acquitted Osman of involuntary deviate sexual intercourse and indecent exposure stemming from the same criminal information. 18 Pa.C.S. §§ 3123, 3127. The facts underlying Osman's convictions are undisputed and irrelevant to this appeal.

hearing followed on November 30, 2022. For corruption of minors, the court imposed a sentence of one to three years of incarceration. *Id*. at 13-14. For unlawful contact and indecent assault, the court initially sentenced Osman to concurrent terms of one to three years of incarceration and three to twelve months of incarceration, respectively. *Id*. at 14. Immediately after that sentence was announced, however, the prosecutor advised the court that Osman was also subject to a consecutive, three-year term of probation.[4] *Id*. at 15. The court agreed and orally amended the sentence for unlawful contact, replacing the concurrent term of one to three years of incarceration with a three-year probation term to run consecutive to the sentence for corruption of minors.[5] *Id*. at 16.

Osman filed a timely notice of appeal. The trial court stated in its Pa.R.A.P. 1925(a) opinion that it was compelled to impose a consecutive three-year period of probation for a Tier III offense. Trial Court Opinion, 5/18/2023, at 14 (citing 42 Pa.C.S. § 9718.5). The court noted that the text of Section 9799(d)(16) indicates that a Tier III classification applies when a person is convicted of two or more Tier I or Tier II offenses. *Id*. (citing 42 Pa.C.S. § 9799(d)(16)). It therefore concluded that Osman was correctly sentenced to a mandatory period of probation because he was convicted of multiple Tier I and Tier II offenses.[6] *Id*.

---

[4] The prosecutor did not cite the applicable statute, 42 Pa.C.S. § 9718.5(a), nor did he accurately describe its terms. Instead, he stated that "when a[n] individual who has to register for Megan's Law is sentenced to an incarceration sentence, they are required under the [s]tatute to have a minimum of three years consecutive probation." N.T., 11/30/2022, at 15.

[5] The Superior Court agreed with the trial court that the verbally amended sentence announced on November 30, 2022 is "the correct sentence." *Commonwealth v. Osman*, 380 MDA 2023, 2024 WL 80951, at *1 (Pa. Super. Jan. 8, 2024) (non-precedential decision). It further directed that the trial court "correct the technical errors" in the written sentencing order upon remand. *Id*. at *3.

[6] Under SORNA's offense classification system, corruption of minors constitutes a Tier I offense. 42 Pa.C.S. § 9799.14(b)(8). Unlawful contact and indecent assault are Tier II offenses. 42 Pa.C.S. §§ 9799.14(c)(1.3), (c)(5).

Osman argued before the Superior Court that the trial court erred in applying Section 9718.5(a). *Osman*, 2024 WL 80951, at *2. In a non-precedential decision, the Superior Court agreed with the trial court's analysis, holding that because Osman was convicted of multiple Tier I or Tier II sexual offenses, the plain text of Section 9799(d)(16) dictated that he was subject to the mandatory three-year sentence of probation under Section 9718.5(a). *Id*. at *3. The Superior Court denied Osman's timely application for reargument, and Osman subsequently filed a petition for allowance of appeal.

**Issue**

We rephrased the sole question presented for our review as follows:

> Whether an offender convicted of Tier I and Tier II sexual offenses from a single charged information and who has no prior adjudications or convictions for sexual offenses is subject to the mandatory probation provision of 42 Pa.C.S. § 9718.5.

*Commonwealth v. Osman*, 327 A.3d 616 (per curiam) (Pa. 2024).

**Parties' Arguments**

Osman argues that the trial court illegally imposed a mandatory consecutive three-year period of probation because he is not a Tier III registrant. Osman's Brief at 15. He acknowledges that the trial court must impose a consecutive three-year period of probation pursuant to Section 9718.5(a) if an individual is convicted of a Tier III offense under Section 9799.14(d). *Id*. at 16-17 (citing 42 Pa.C.S. §§ 9718.5, 9799.14(d)). He does not contest that he was convicted of both Tier I and Tier II sexual offenses. *Id*. at 18. He argues that there is ambiguity in Section 9799.14(d)(16), which states that a person shall be classified as a Tier III registrant where he has "[t]wo or more convictions of offenses listed as Tier I or Tier II sexual offenses." *Id*. (citing 42 Pa.C.S. § 9799.14(d)(16)). Osman notes that the statute does not specify whether "two or more

convictions" requires the convictions to stem from separate criminal informations, but he argues that it must because of the surrounding statutory context. *Id*.

Osman first points to this Court's ruling in *A.S. v. PSP*, where we addressed the lifetime registration requirement in the prior Pennsylvania Registration of Sexual Offenders Statute ("Megan's Law II"), which provided that "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)" shall be subject to lifetime registration. 42 Pa.C.S. § 9795.1(b)(1) (superseded). Osman acknowledges that *A.S. v. PSP* dealt with a superseded statute; however, Osman notes that *A.S. v. PSP* addressed similar language in Megan's Law II, and discusses *Commonwealth v. Gehris*, 54 A.3d 862 (Pa. 2012), upon which *A.S. v. PSP* relies. He observes that we held in *A.S. v. PSP* that "two or more convictions" language requires the commission of "a conviction and then a subsequent act to trigger lifetime registration." Osman's Brief at 19 (citing *A.S. v. PSP*, 143 A.3d at 908). Osman avers we reached that conclusion after finding the statutory text to be contextually ambiguous, a question that had divided the *Gehris* Court evenly, and that the "two or more convictions" language required more than multiple convictions stemming from a single criminal information. *Id*. at 19-23.

Osman then summarizes *Commonwealth v. Lutz-Morrison*, 143 A.3d 891 (Pa. 2016), which dealt with the similar statutory language of SORNA at issue today. *Id*. at 23-24 (citing *Lutz-Morrison*, 143 A.3d at 893-95). The *Lutz-Morrison* Court, following the reasoning in *A.S. v. PSP*, determined that Section 9799.14(d)(16) likewise required "an act, a conviction, and a subsequent act." *Id*. at 24 (quoting *Lutz-Morrison*, 143 A.3d at 895).

Osman therefore contends that under *A.S. v. PSP* and *Lutz-Morrison*, he cannot be considered a Tier III registrant for purposes of the three-year mandatory probation requirement because those cases interpreted the "two or more convictions" language to

require "an act, a conviction, and a subsequent act." *Id*. Thus, he argues that he is not subject to Section 9718.5(a)'s mandatory sentence because all of his Tier I and Tier II offenses stemmed from the same criminal information and trial, and he was not previously convicted of any qualifying offenses for purposes of Section 9799.14(d)(16). *Id*.

Osman further argues that, as we held in *Lutz-Morrison*, the statutory language of Section 9799.14(d)(16) is ambiguous and should be construed in his favor because it is used in conjunction with Section 9718.5 to effectively increase the aggregate statutory maximum sentence for Tier I and II convictions that trigger Tier III status. *Id*. at 25-27 (citing 42 Pa.C.S. § 9718.5(b)). He argues that because Section 9718.5 is a penal statute, it must be construed in his favor pursuant to the rule of lenity. *Id*. at 25-26. Osman further contends that the rule of lenity requires this Court to read Section 9718.5 and Section 9799.14(d)(16) together such that a subsequent conviction is required to impose a mandatory period of probation for a person who is classified as a Tier III registrant under Section 9799.14(d)(16). *Id*. at 27-28.

Osman asserts that SORNA's legislative history shows that the General Assembly was concerned with recidivism and intended to punish more severely those who reoffend by committing subsequent Tier I and II offenses rather than punishing those who commit multiple simultaneous offenses. *Id*. at 29. He argues that the Legislature could have amended Section 9799.14(d) before reenacting SORNA in 2018 if it did not agree with this Court's decision in *A.S. v. PSP* (and by extension, *Lutz-Morrison*). *Id*. at 29-30. Osman contends that the General Assembly's failure to do so demonstrates its intent to give effect to *Lutz-Morrison*'s interpretation of Section 9799.14(d) as requiring an act, a conviction and a subsequent act to trigger that provision. *Id*. at 30-31.

The Commonwealth asserts that Osman ignores SORNA's unambiguous language "that two or more SORNA offenses would trigger the application of the

mandatory probation period." Commonwealth's Brief at 7-8. Nonetheless, the Commonwealth contends that even if Section 9799.14(d)(16) were ambiguous, his resolution of that ambiguity would lead to an absurd result because "no reasonable person could have intended" it, and "there is a nonabsurd reading that could be achieved by modifying the enacted text in relatively simple ways." *Id*. at 8 (citing *Commonwealth v. Green*, 291 A.3d 317 (Pa. 2023)).[7]

The Commonwealth asserts that the legislative intent of Section 9718.5 is reflected in Representative Ron Marsico's Co-Sponsorship Memo. *Id*. at 8-9 (citing Co-Sponsorship Memo to H.B. 631, Printer's No. 2992, 201st Gen. Assemb., Reg. Sess. (Pa. 2017), https://www.palegis.us/house/co-sponsorship/memo?memoID=22358) ("Marsico Memo").[8] The Commonwealth states that the Legislature intended to punish more severely an individual who engages in more instances of chargeable conduct than someone who engages in less instances of chargeable conduct regardless of whether

---

[7] In *Green*, this Court described the United States Supreme Court's "absurdity doctrine." We noted that in *Holy Trinity Church v. United States*, 143 U.S. 457, 460, (1892), the High Court stated that "[i]f a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity." *Green*, 291 A.3d at 323 (quoting *Holy Trinity Church*, 143 U.S. at 460). We concluded in *Green* that the at-issue interpretation of the Juvenile Act was "not absurd" because "the application of the clear language of the statute does not cause results that were not contemplated," and the application of the terms of the statute as written did not "offend common sense, although some might find the policy behind the statutory provision and rule offensive or overly harsh." *Id*. at 330.

[8] The Marsico Memo reflects Representative Marsico's intention that Section 9718.5(a) imposes the mandatory probation period on Tier III sex offenders. *See* Marsico Memo ("I plan to introduce the attached legislation which will require the court to impose a mandatory three[-]year probation period consecutive to any term of total confinement for a person convicted of a Tier III sex offense[.]"). The Commonwealth fails to explain how Representative Marsico's understanding of Section 9718.5(a) of the Sentencing Code informs the meaning of Section 9799.14(d)(16) of SORNA, when both the Marsico Memo and related passage of Section 9718.5(a) postdate our interpretation of Section 9799.14(d)(16) in *Lutz-Morrison*. Moreover, because neither party suggests that Section 9718.5(a) is ambiguous, its legislative history is irrelevant. Consequently, we will not address the Marsico Memo further as it has no bearing on our analysis of whether Section 9799.14(d)(16) applies to Osman.

the offenses were simultaneous or subsequent. *Id*. at 9-10. Moreover, the Commonwealth avers that Section 9799.14(d)(16) does not require an act, a conviction and a subsequent act because a person can commit multiple sex crimes at once. *Id*. at 9-10.

The Commonwealth concedes that *A.S. v. PSP* and *Lutz-Morrison* are adverse to its position. *Id*. It agrees with Justice Wecht's dissent in *A.S. v. PSP* finding that similar language under Megan's Law II was unambiguous. *Id*. at 10-14 (quoting *A.S. v. PSP*, 143 A.3d at 915-17 (Wecht, J., dissenting)). The Commonwealth also agrees with then-Justice Todd's dissent in *A.S. v. PSP*, finding that the language of the statute is unambiguous and that it does not demonstrate a recidivist philosophy. *Id*. at 14-22 (quoting *A.S. v. PSP*, 143 A.3d at 910-15 (Todd, J., dissenting)). The Commonwealth makes no effort to distinguish the statutes at issue in *A.S. v. PSP* and *Lutz-Morrison* from the matter before the Court today.

The Commonwealth argues that Section 9718.5 does not concern a recidivist philosophy because sex offenders ostensibly do not take advantage of opportunities for rehabilitation while incarcerated. *Id*. at 8-9, 23 (citing Marsico Memo). It further contends that probation is not punitive but instead is "actually a measure to rehabilitate the offender and protect the public[.]" *Id*. at 24 (quoting Marsico Memo). The Commonwealth then recites the underlying facts of this case and asserts that Osman's conduct was "sufficiently serious" to qualify as a Tier III offender. *Id*. at 23-24.

In his Reply Brief, Osman notes that the Commonwealth's argument simply reiterates then-Justice Todd's and Justice Wecht's dissenting opinions in *A.S. v. PSP*. Osman's Reply Brief at 2. In so doing, he argues that the Commonwealth ignores stare decisis, which requires more than a belief that a decision was wrongly decided for the court to overturn it. *Id*. at 2-3. Osman contends that there are no special reasons to

deviate from this Court's holdings in *A.S. v. PSP* and *Lutz-Morrison* that the "two or more convictions" language in Megan's Law II, and now SORNA, requires "an act, a conviction, and a subsequent act to trigger lifetime registration for multiple offenses otherwise subject to a fifteen- or twenty-five-year period of registration." *Id*. at 5 (quoting *Lutz-Morrison*, 143 A.3d at 895).

Osman avers that the Commonwealth's reliance on the legislative history for a bill that was passed after this Court's decisions in *A.S. v. PSP* and *Lutz-Morrison* does not support the Commonwealth's arguments because the Legislature had the opportunity to amend the disputed text since this Court decided those cases, and it has not done so. *Id*. at 9-11. Osman explains that the Legislature has previously responded to this Court's rulings by amending SORNA; for example, the Legislature created Subchapter H and Subchapter I to address this Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017). *Id*. at 7-9. Lastly, Osman asserts that the Commonwealth's policy arguments and appeal to emotion are unpersuasive because such arguments fail to address this Court's prior decisions and do not independently articulate why those decisions should be overruled. *Id*. at 15-16.

**Analysis**

Osman challenges the legality of his Section 9718.5(a) sentence. A challenge to the legality of a sentence is unwaivable.[9] *Commonwealth v. Barnes*, 151 A.3d 121, 124 (Pa. 2016). The challenge before us requires our interpretation of Section 9718.5(a) in conjunction with Section 9799.14(d)(16). Interpretation of a sentencing statue is a "pure

---

[9] Osman has always maintained that his Section 9718.5(a) sentence was illegal However, the specific nature of the challenge before us, which is grounded in our analyses in *A.S. v. PSP* and *Lutz-Morrison*, was first raised Osman's brief to the Superior Court. *See* Osman's Superior Court Brief at 28. Because Osman's legality-of-sentence claim is unwaivable question of law, his failure to raise it with specificity before the trial court is no impediment to our review.

question of law" to which we apply a plenary scope of review and a de novo standard of review. *Commonwealth v. Weir*, 239 A.3d 25, 30 (Pa. 2020).

Our goal in interpretating any statute is to "give full effect to the General Assembly's intent." *Mimi Investors, LLC v. Tufano*, 297 A.3d 1272, 1284 (Pa. 2023) (citing 1 Pa.C.S. § 1921(a)). The best evidence of legislative intent is found in a statute's plain text. *Id*. Thus, when a statute's text is clear and unambiguous, we will not circumvent its text "under the pretext of pursuing its spirit." *Id*. (quoting 1 Pa.C.S. § 1921(b)). Ambiguity exists in a statute when its text is subject to "at least two reasonable interpretations[.]" *A.S. v. PSP*, 143 A.3d at 906. After we identify such an ambiguity, we may then "go beyond the text" to ascertain the General Assembly's intent. *Id*. at 903. Generally, we resolve ambiguity

> by considering, inter alia, the following: the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute.

*Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 984 (Pa. 2016) (italics omitted) (citing 1 Pa.C.S. § 1921(c)).

Our resolution of textual ambiguities is further guided by the rules of strict and liberal construction of statutes. Usually, statutes are to be "liberally construed to effect their objects and to promote justice." 1 Pa.C.S. § 1928(c). However, we are obligated to strictly construe several classes of statutes. *Id*. § 1928(b). For instance, penal provisions must be strictly construed. *Id*. § 1928(b)(1). Strict construction of penal statutes—the rule of lenity[10]—is not merely commanded by the General Assembly under Section

---

[10] *See Rule of Lenity*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The judicial doctrine holding that a court, in construing an ambiguous criminal statute that sets out multiple or (continued…)

1928(b)(1); it is grounded in due process, as "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes" and "[a]ll are entitled to be informed as to what the State commands or forbids." *Lanzetta v. State of N.J.*, 306 U.S. 451, 453 (U.S. 1939). However, the rule of lenity cannot serve to undermine the plain text of a penal statute; it instead commands that a court's interpretation of ambiguous text in criminal statutes be resolved against the Commonwealth. *Commonwealth v. Lassiter*, 722 A.2d 657, 660 (Pa. 1998) (stating "it is axiomatic that, under the rule of lenity, penal statutes must be strictly construed, with ambiguities being resolved in favor of the accused").

The matter before us concerns the interaction between two statutes, but the parties only dispute the meaning of one of them. The meaning and operation of Section 9718.5(a) is not in dispute. Under that provision, courts must impose a mandatory, consecutive three-year term of probation under certain conditions.

### § 9718.5. Mandatory period of probation for certain sexual offenders

**(a) Mandatory probation supervision after release from confinement.—**A person who is convicted in a court of this Commonwealth of an offense under section 9799.14(d) (relating to sexual offenses and tier system) shall be sentenced to a mandatory period of probation of three years consecutive to and in addition to any other lawful sentence issued by the court.

**(b) Imposition.—**The court may impose the term of probation required under subsection (a) in addition to the maximum sentence permitted for the offense for which the defendant was convicted.

**(c) Authority of court in sentencing.—**There shall be no authority in a court to impose on an offender to which this section is applicable a lesser period of probation than

---

inconsistent punishments, should resolve the ambiguity in favor of the more lenient punishment.").

provided for under subsection (a). Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory period of probation provided under this section.

\* \* \*

42 Pa.C.S. § 9718.5(a)-(c).

Subsection 9718.5(a) establishes the types of offenses that are subject to the mandatory probation term—offenses listed under Section 9799.14(d)—and establishes a mandatory term of probation of three years. Subsection 9718.5(b) gives express statutory authorization to permit the three-year term of probation to exceed the statutory maximum for the underlying offense. Somewhat redundant to Subsection 9718.5(a), Subsection 9718.5(c) declares that a trial court cannot impose a term of probation of less than three years for a qualifying offense. It also states that the sentencing guidelines cannot supersede the mandatory probation period.

At issue in this case is what qualifies as an offense under Section 9799.14(d). Section 9799.14 provides in pertinent part as follows:

### § 9799.14. Sexual offenses and tier system

(a) **Tier system established.—**Sexual offenses shall be classified in a three-tiered system composed of Tier I sexual offenses, Tier II sexual offenses and Tier III sexual offenses.

\* \* \*

(d) **Tier III sexual offenses.--**The following offenses, or an attempt, conspiracy or solicitation to commit any of the following offenses, shall be classified as Tier III sexual offenses:

\* \* \*

(16) Two or more convictions of offenses listed as Tier I or Tier II sexual offenses.

\* \* \*

42 Pa.C.S. § 9799.14.

As noted above, Osman was convicted at a single trial of corruption of minors, unlawful contact with a minor, and indecent assault. Thus, he was convicted of two Tier II offenses and one Tier I offense. This much is undisputed. The question before us concerns whether those offenses trigger Section 9799(d)(16). As explained below, that question was fully resolved by this Court in *Lutz-Morrison*.

We first addressed language similar to Section 9799(d)(16) in *Gehris*, where we had been unable to reach a majority decision. Gehris engaged in explicit sexual communications with an undercover state police officer posing as a thirteen-year-old girl. *Gehris*, 54 A.3d at 862. He pled guilty to four offenses, none of which individually required lifetime registration with the PSP. *Gehris*, 54 A.3d at 862-63. However, the trial court determined, and the Superior Court agreed, that Gehris was nonetheless required to register for life under Megan's Law II, which mandated lifetime registration with the PSP for an "individual with two or more convictions of any of the offenses set forth in subsection (a)." *Id*. at 863-64 (quoting 42 Pa.C.S. § 9795.1(b)(1) (repealed 2012)).[11] Gehris asked this Court to decide whether lifetime registration under subsection (b) of Section 9795.1(b)(1) applied "to those who plead guilty to two or more listed offenses when those offenses arise out of one, non-violent criminal episode?" *Id*. at 872.

In the Opinion in Support of Affirmance ("OISA") authored by then-Justice Todd, half of this Court found that the "plain language" of Section 9795.1(b)(1) did not "require any particular sequential or temporal ordering of the multiple convictions in order for the lifetime registration requirements to apply." *Id*. at 866 (Todd, J., OISA). Then-Justice Todd concluded for the OISA, therefore, that "because the timing of the multiple

---

[11] Subsection 9795.1(a) listed offenses that required a ten-year registration period with the PSP. 42 Pa.C.S. § 9795.1(a) (repealed 2012). Gehris pled guilty to at least two such offenses under the same criminal information. *Gehris*, 54 A.3d at 870-71.

convictions is irrelevant" under the statute, Section 9795.1(b)(1) compelled Gehris to register for life. *Id*.

Chief Justice Castille wrote the Opinion in Support of Reversal ("OISR") for the remaining Justices in *Gehris*. Justice Castille acknowledged that Section 9795.1(b)(1) was not "ambiguous or unclear" at first glance, but determined that it lacked "specificity" when applied to "an offender who has committed 'two or more' subsection (a) offenses during the course of a single continuous criminal episode or course of conduct." *Id*. at 875 (Castille, C.J., OISR). He found that application of the provision in a "mechanical" fashion "may not always be proper" considering the statutory scheme's "recidivist philosophy[.]" *Id*. Chief Justice Castille described that philosophy as follows:

> The essence of the recidivist philosophy is to afford first-time offenders (or offenders convicted of less serious offenses) some amount of time within which to modify their behavior away from criminality. Should they fail to take advantage of the opportunity, and transgress a second time or more, the next sentence will be more severe. The general concept has long been part of the common law.

*Id*. (quotation marks indicating emphasis omitted).

Chief Justice Castille noted that this Court has considered a statute's recidivist philosophy in resolving questions of statutory interpretation in a variety of contexts.[12] Similarly, Chief Justice Castille believed it was "clear that the primary concern" of Section 9795.1 was sexually violent predators and repeat offenders who "pose a high risk of engaging in further offenses even after being released from incarceration[.]" *Id*. at 879 (quoting 42 Pa.C.S. § 9791(a)(2) (repealed 2012)). In that regard, he believed that lifetime registration requirements had been designed to capture "more serious (primarily

---

[12] *Gehris*, 54 A.3d at 876-78 (discussing *Commonwealth v. Jarowecki*, 985 A.2d 955 (Pa. 2009); *Commonwealth v. McClintic*, 909 A.2d 1241 (Pa. 2006); *Commonwealth v. Shiffler,* 879 A.2d 185 (Pa. 2005); *Commonwealth v. Vasquez*, 753 A.2d 807 (Pa. 2000); *Commonwealth v. Williams*, 652 A.2d 283 (Pa. 1994); *Commonwealth v. Dickerson,* 621 A.2d 990 (Pa. 1993)).

violent) offenders and 'true' recidivists who squander a given opportunity to reform[.]" *Id*. By contrast, he stated that "first-time offenders" are provided an "opportunity for rehabilitation and eventual freedom from the requirements[.]" *Id*. Consequently, Chief Justice Castille would have held that under Section 9795.1(b), "a defendant convicted of 'two or more' subsection (a) offenses are subject to the lesser sanction of the ten-year registration requirement so long as it is clear that the offenses were part of the same course of criminal conduct." *Id*.

Next, in *A.S. v. PSP*, we revisited Section 9795.1(b). When A.S. was twenty-one years old, he engaged in a "series of sexual encounters" with a sixteen-year-old victim. *A.S. v. PSP*, 143 A.3d at 899. Those encounters were not criminal because of the age of consent, however, "during the course of the relationship, [A.S.] persuaded the victim to take and transmit sexually explicit photographs of herself and he also photographed the two engaging in sexual acts." *Id*. Consequently, the Commonwealth charged A.S. with "seven counts of sexual abuse of children …, twenty counts of sexual abuse of children …, and single counts of unlawful contact with a minor, corruption of minors, and criminal solicitation." *Id*. A.S. ultimately pled guilty to "single counts of sexual abuse of children and unlawful contact with a minor—each of which was an enumerated offense for purposes of Megan's Law II reporting under Section 9795.1(a)—and corruption of minors, which was not." *Id*. After A.S. was deemed not to be a sexually violent predator, the court imposed sentence under the assumption, uncontested at the time, that A.S. "was subject to a ten-year registration period, not lifetime registration." *Id*. However, after A.S. completed his sentence and registered with the PSP for ten years, the PSP refused to remove him from the registry, "claiming his guilty plea to both sexual abuse of children and unlawful contact with a minor triggered lifetime registration under Section 9795.1(b)(1), because he was 'an individual with two or more convictions' of offenses

listed in subsection (a)." *Id*. at 900 (quoting 42 Pa.C.S. § 9795.1(b)(1) (repealed 2012)). A.S. responded with a mandamus action seeking his removal from the registry. *Id*. A divided Commonwealth Court granted A.S.'s motion for summary judgment and directed the PSP to remove him from the registry, largely following the reasoning of the OISR in *Gehris*. *A.S. v. PSP*, 87 A.3d 914, 922 (Pa. Commw. 2014) (en banc). We affirmed. *A.S. v. PSP*, 143 A.3d at 897-98.

Interpreting Section 9795.1(b)(1), we found that *Gehris*' OISA and OISR "each offered a developed, reasoned expression concerning the meaning" of that provision. *Id*. at 903. While both opinions had observed no facial ambiguity in the provision, we noted that the *Gehris* OISA conceded that the *Gehris* OISR had presented "a reasoned, plausible, policy-based rationale" for interpreting Section 9795.1(b)(1) "as reflecting a recidivist philosophy." *Id*. at 904 (quoting *Gehris*, 54 A.3d at 862 (OISA)). In *A.S. v. PSP*, however, a majority of this Court reached a consensus that could not be reached in *Gehris*. That consensus was "persuaded by the core" of the *Gehris* OISR's analysis and adopted much of it. *Id*. at 904-05.

Augmenting Chief Justice Castille's analysis in the *Gehris* OISR, we first addressed the lack of textual ambiguity of Section 9795.1(b)(1), noting that ambiguity nonetheless arose when that provision was considered in the context of the overall recidivist statutory scheme of Megan's Law II. *Id*. at 905-06 (citing *Yates v. United States*, 574 U.S. 528 (2015)).[13] We faulted both the OISA and OISR for failing to "cite this precept advising a contextual approach to assessing legislative intent and statutory ambiguity." *Id*. at 906. Nonetheless, we found that the "OISR's approach in considering the overall

---

[13] In *Yates*, the Supreme Court stated that ambiguity does not turn solely on dictionary definitions, but instead on "the specific context in which that language is used," when placed in the "broader context of the statute as a whole[,]" noting that "[i]n law as in life, … the same words, placed in different contexts, sometimes mean different things." *Yates*, 574 U.S. at 537 (internal citations and quotation marks omitted).

statute, including legislative policy findings, in ascertaining the legislative intent and finding Section 9795.1[(b)(1)] to be ambiguous is consonant with that principle." *Id*. at 906. We also found that the statute's ambiguity was further demonstrated by the record at A.S.'s sentencing, as "the prosecutor, [A.S.] and the trial judge all believed this first-time offender, who was not a sexually violent predator, was subject to ten-year registration." *Id*. Third, although we recognized that Section 9795.1, as a registration provision, was "not punitive for purposes of constitutional challenges," we indicated that rejection of the application of the rule of lenity for that reason alone was not straightforward given the "complex and nuanced" circumstances in which Section 9795.1 applies. *Id*. at 907. This was because of the "obvious burden of registration and the potentially serious criminal consequences of a lapse[.]" *A.S. v. PSP*, 143 A.3d at 907.[14] Having adopted the *Gehris* OISR's analysis with those additional considerations, we ultimately held that to trigger the two-or-more-convictions language of Section 9795.1(b)(1), "the statute requires an act, a conviction, and a subsequent act[.]" *Id*. at 908.[15]

---

[14]  Nonetheless, we did not rely on the principle of lenity in interpreting Section 9795.1(b)(1). *Id*. at 907 n.13.

[15]  Then-Justice Todd dissented. *Id*. at 910-15 (Todd, J., dissenting). She would have found, as she had expressed in the *Gehris* OISA that she authored, that Section 9795.1(b)(1) was unambiguous. *Id*. at 910. She believed that the provision had no language suggesting temporal separation between the commission of offenses, and that such a reading was consistent with her understanding of the purpose of the registration requirement, which she believed was focused on protection of the public rather than punishment of sexual offenders. *Id*. at 912-13 (citing *Gehris*, 54 A.3d at 866-67 (OISA)). Then-Justice Todd further criticized the Majority's reasons for finding ambiguity in Section 9795.1(b)(1) as being "unpersuasive[.]" *Id*. at 914. Although Justice Wecht joined then-Justice Todd's dissent insofar as it held that the plain language of Section 9795.1(b)(1) required a different result than reached by the Majority, he wrote separately to emphasize that he shared "the concerns underlying the Majority's reasoning" and that like the Majority, he believed "the statutory scheme should embody a recidivist philosophy." *Id*. at 917 (Wecht, J., dissenting). However, Justice Wecht believed the Majority had altered (continued…)

We decided *Lutz-Morrison* on the same day. *Lutz-Morrison*, 143 A.3d at 892. *Lutz-Morrison* decided a direct appeal from the imposition of sentence on Thomas Lutz-Morrison after he pled guilty to three counts of possession of child pornography. *Id*. at 893. Because there were three counts of child pornography (each constituting a Tier I offense), the trial court imposed lifetime registration requirements pursuant to the OISA's rationale in *Gehris*, and the Superior Court affirmed. *Id*. at 893-94. *Lutz-Morrison* involved what we described as "nearly identical" language to that which we addressed in *A.S. v. PSP*, language that remains in Section 9799.14(d)(16) to this day.

We reversed the Superior Court, applying *A.S. v. PSP*. *Id*. at 894-95. We held that application of *A.S. v. PSP* was "straightforward[,]" and we dismissed two potential bases for distinguishing the two cases. *Id*. at 895. First, we recognized a "textual distinction" between the repealed Section 9795.1(b)(1) and new text of Section 9799.14(d)(16), in that lifetime registration applied under the former when an individual had "two or more convictions of **any of the** offenses set forth in subsection (a)[,]" 42 Pa.C.S. § 9795.1(b)(1) (repealed 2012) (emphasis added), whereas lifetime registration applied under Section 9799.14(d)(16) when an individual has "[t]wo or more convictions of offenses listed as Tier I or Tier II sexual offenses[,]" 42 Pa.C.S. § 9799.14(d)(16). *Lutz-Morrison*, 143 A.3d at 895 n.2. No party had argued that the General Assembly's deletion of the emphasized language altered the meaning of the text, and this Court did not identity a basis for distinction. *Id*. Second, after noting the similarities between the prosecutions of A.S. and Lutz-Morrison, we did "not dispute the Commonwealth's argument that each image of child pornography possessed represents a separate, independent crime[.]" *Id*. at 895 n.4. Despite this, "for reasons explained in" *A.S. v. PSP*, we viewed "the SORNA registration question as distinct and deem[ed] it controlled by the recidivist philosophy

---

"the meaning of unambiguous statutory language in order to achieve what it perceives to be a preferable result." *Id*.

animating this tiered scheme." *Id*. We thus repeated our holding in *A.S. v. PSP*, now applicable to the nearly-identical text of Section 9799.14(d)(16), that "the statute requires an act, a conviction, and a subsequent act to trigger lifetime registration for multiple offenses otherwise subject to a fifteen- or twenty-five-year period of registration." *Id*. at 895.

Then-Justice Todd and Justice Wecht dissented. Although Justice Todd agreed with the Majority that *Lutz-Morrison* was controlled by *A.S. v. PSP*, she reiterated her rationale for dissenting in *A.S. v. PSP*. *Id*. at 895-96 (Todd, J., dissenting). Justice Wecht joined then-Justice Todd's dissent, "subject to the reservations" he expressed in *A.S. v. PSP*. *Id*. at 896 (Wecht, J., dissenting). Neither dissenting Justice suggested that questions before *A.S. v. PSP* and *Lutz-Morrison* were distinguishable on any basis.

This Court subsequently granted, vacated, and remanded three separate appeals in light of our decision in *Lutz-Morrison*.[16] *Lutz-Morrison* was also subsequently applied in two published opinions by the Superior Court. *Commonwealth v. Sauers*, 159 A.3d 1, 16 (Pa. Super. 2017) (holding sua sponte that *Lutz-Morrison* presented "a non-waivable legality-of-sentence issue" that required it to "vacate the lifetime registration portion of [Sauer]'s sentence and remand for re-sentencing under SORNA"); *Commonwealth v. Leonard*, 172 A.3d 628, 630-31 (Pa. Super. 2017) (stating that under *Lutz–Morrison*, "Section 9799.14(d)(16) of SORNA requires an act, conviction, and subsequent act to trigger lifetime registration for multiple" Tier I and II offenses). *A.S. v. PSP* and *Lutz-Morrison* have also been applied in non-precedential decisions by that court. *See, e.g.*,

---

[16] See *Commonwealth v. Fox*, 639 Pa. 314, 315 (Pa. 2016) (per curiam order); *Commonwealth v. Taylor*, 639 Pa. 313, 314 (Pa. 2016) (per curiam order); *Commonwealth v. Reynolds*, 639 Pa. 401, 402 (Pa. 2016) (per curiam order). In *Reynolds*, we specifically instructed the Superior Court to impose the lesser reporting requirement under SORNA. *Reynolds*, 639 Pa. at 402.

*Commonwealth v. Keech*, 371 WDA 2019, 2020 WL 86565 (Pa. Super. 2020) (non-precedential decision).

Thus, since *Lutz-Morrison* was decided a decade ago, Section 9799.14(d)(16) has been interpreted consistently by the courts of this Commonwealth as requiring an act, a conviction, and a subsequent act to trigger its application. *Lutz-Morrison* applies directly here, as it is undisputed that Osman had no prior qualifying offenses before his August 2022 convictions for purposes of Section 9799.14(d)(16). Thus, there was no legal authorization for the trial court to impose the mandatory Section 9718.5(a) sentence because Section 9799.14(d)(16) was not trigged by Osman's August 2022 convictions. Consequently, the trial court's imposition of a Section 9718.5(a) sentence was unlawful. *See Commonwealth v. Prinkey*, 277 A.3d 554, 55 (Pa. 2022) (stating that "a sentence is unlawful if the sentencing court lacks the legal authority to impose that sanction"). The Superior Court failed to consider *Lutz-Morrison*'s precedential interpretation of Section 9799.14(d)(16) when it determined that it applied to Osman based on the statute's plain text. *Osman*, 2024 WL 80951, at *3. The court's interpretation of Section 9799.14(d)(16) in contravention of *Lutz-Morrison* was clear error.

The Commonwealth endorses the Superior Court's decision because it believes "the plain language of the statute is unambiguous and thus demands literal application." Commonwealth's Brief at 3. But this is not a new argument at all; it is precisely the position of the dissenting Justices in *A.S. v. PSP* and *Lutz-Morrsion*. The Commonwealth even concedes that those decisions control the outcome of this case. *See* Commonwealth's Brief at 10 (admitting the core issue in this case was decided in *A.S. v. PSP*). Nonetheless, the Commonwealth argues that the dissenting Justices in *A.S. v. PSP* and *Lutz-Morrison* were correct and relies on then-Justice Todd's dissent in *A.S. v. PSP* and portions of Justice Wecht's dissent to argue that Osman is not entitled to relief

today.  *Id*. at 14-22.  The Commonwealth also argues that the record supports that Osman's offenses occurred over a period of years such that Osman should not be "afforded a wholesale discount for his egregious conduct that spanned the course of basically the victim's entire[] adolescent life."  *Id*. at 23.

By relying on the dissenting opinions in *A.S. v. PSP* and *Lutz-Morrison*, the Commonwealth implies that those precedential decisions were wrongly decided.  However, we did not grant allocatur to decide the continued validity of those decisions and—oddly—the Commonwealth never explicitly asks this Court to overrule them.  We granted review solely to determine whether Section 9718.5(a) applies when an offender's Tier I and Tier II convictions for purposes of Section 9799.14(d)(16) all stem from the same criminal information and trial.  We did not grant review to reconsider *Lutz-Morrison*'s interpretation of Section 9799.14(d)(16), which flowed directly from our analysis in *A.S. v. PSP*.

Moreover, beyond endorsing the dissenting opinions in *Lutz-Morrison* and *A.S. v. PSP*, the Commonwealth has made no discernable effort to challenge the application of the principle of stare decisis to those now decade-old decisions.  We follow our prior decisions under that principle, even questionable ones, "because stare decisis 'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Commonwealth v. Alexander*, 243 A.3d 177, 196 (Pa. 2020) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (citation omitted)).  Although we are not barred from reconsidering our precedent, we do so only when there is a "special justification" that exists "over and above the belief that the precedent was wrongly decided—in matters involving statutory, as opposed to constitutional, construction." *Yoder v. McCarthy Construction, Inc.*, 345 A.3d 668, 681 (Pa., 2025) (quoting

*Commonwealth v. Reid*, 235 A.3d 1124, 1168 (Pa. 2020)).[17] Stare decisis is afforded "greater sanctity" in our interpretation of statutes "because the legislature can prospectively amend the statute if it disagrees with a court's interpretation." *Id*. (quoting *Commonwealth v. Doughty*, 126 A.3d 951, 955 (Pa. 2015)). The Commonwealth has failed to advance any special justification to overrule *Lutz-Morrison* or *A.S. v. PSP*. *See Yoder*, 345 A.3d at 681 (rejecting reconsideration of precedent where the petitioner merely rehashed the same arguments that were advanced when the challenged precedent was decided).

We also ascertain no independent basis upon which to revisit those decisions. The General Assembly has repeatedly declined to revise Section 9799.14(d)(16) since *Lutz-Morrison* and *A.S. v. PSP* were decided. The General Assembly has amended Section 9799.14 no less than six times since 2016, including in 2018 legislation[18] that also added Section 9718.5(a) to the Sentencing Code. Furthermore, while *A.S. v. PSP* and *Lutz-Morrsion* were solely concerned with statutory language controlling the application of classification for the purpose of registration requirements under SORNA, the instant matter involves application of Section 9799.14(d)(16) for sentencing purposes under Section 9718.5(a). Once the contextual ambiguity of Section 9799.14(d)(16) is recognized, this Court is obligated to strictly construe that provision in favor of Osman under the principle of lenity given its direct impact on Section 9718.5(a).[19] Moreover,

---

[17] As we have articulated previously, special justifications above and beyond the reasonableness of the prior decision must be advanced to reject application of stare decisis. Such considerations include the age of the precedent, any reliance interests at stake, and the precedent's workability. *Yoder*, 345 A.3d at 681.

[18] Act of Feb. 21 2018, P.L. 27, No. 10 ("Act 10"). Act 10 was the General Assembly's prompt response to amend SORNA following our decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017). *See* 42 Pa.C.S. § 9799.11(b)(4).

[19] The Commonwealth unconvincingly argues that Section 9718.5(a) is not punitive because it is not intended to "change an individual's behavior through punishment, but to (continued…)

there is no evidence before this Court that our interpretation of Section 9799.14(d)(16) in *Lutz-Morrison* has proved unworkable in the lower courts.

Penultimately, we reject the Commonwealth's additional argument that enforcing our precedent means that we are granting Osman a volume discount for his crimes. *See* Commonwealth's Brief at 23. Osman was convicted on multiple counts and exposed to separate sentences on each count. Our decision today in no way affects the trial court's discretion to impose sentences commensurate with the gravity and frequency of a defendant's offenses. Section 9718.5(a) is a mandatory sentencing provision that, in conjunction with Section 9799.14(d)(16), imposes **an additional penalty for recidivists**, and so the unavailability of that additional penalty does not constitute a volume discount for multiple crimes. Under *Lutz-Morrison*, Osman is not a recidivist warranting Tier III classification under Section 9799.14(d)(16). Consequently, it was unlawful to sentence him under Section 9718.5(a).

---

ensure that the person properly adjusts to life outside of prison." Commonwealth's Brief at 25; *see also id.* at 3 (stating that the "statute is not punitive as much as it is to ensure the protection of the public and the rehabilitation of the offender").

"A penal statute is one which imposes a penalty or forfeiture for transgressing its provisions, or for doing a thing prohibited, and **it is none the less a penal statute because it is also remedial**." *Nesbit v. Clark*, 116 A. 404, 406 (Pa. 1922) (emphasis added). This Court has repeatedly recognized probation as a traditional method of punishment, regardless of whether it has a rehabilitative purpose. *See Commonwealth v. Torsilieri*, 316 A.3d 77, 105 (Pa. 2024) (observing that "probation-like criminal penalties for noncompliance" weigh in favor of finding that a statute has a punitive effect); *Commonwealth v. Lacombe*, 234 A.3d 602, 622 (Pa. 2020) (recognizing that this Court has determined that probation "has historically been considered a traditional form of punishment") (quoting *Commonwealth v. Perez*, 97 A.3d 747, 763 (Pa. Super. 2014) (Donohue, J., concurring)). This Court has also recently applied the principle of lenity to a probation statute. *Commonwealth v. Rosario*, 294 A.3d 338, 350 (Pa. 2023) (citing *Nesbit* and stating that "to the extent that [42 Pa.C.S. §] 9771 remains, after exhausting all other tools of statutory interpretation, hopelessly ambiguous as to whether it authorizes the anticipatory revocation of a probation, the rule of lenity calls for the conclusion it does not").

Finally, because "our disposition disrupts the sentencing scheme" imposed by the trial court, we vacate Osman's judgment of sentence and "remand to the Superior Court with instructions to remand for resentencing." *Commonwealth v. King*, 234 A.3d 549, 552 (Pa. 2020).

**Conclusion**

Applying our holding in *Lutz-Morrison* to the facts of this case, Osman was illegally sentenced under Section 9718.5(a). The Superior Court erred in concluding otherwise, and we reverse that portion of its decision. However, because our disposition disrupts the sentencing scheme imposed by the trial court, we remand to the Superior Court with instructions to remand to the trial court for resentencing.

Chief Justice Todd and Justices Dougherty, Brobson and McCaffery join the opinion.

Justice Dougherty files a concurring opinion.

Justice Brobson files a concurring opinion.

Justice Wecht files a dissenting opinion in which Justice Mundy joins.